** NOT FOR PRINTED PUBLICATION **

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| TRACY STEINHAUSER, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 9:09-CV-49 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| KETK; KETK-LP; COMMUNICATIONS CORP. OF AMERICA; and COMCORP OF TYLER, INC., | § § § | |
| | § | |
| *Defendants.* | § | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tracy Steinhauser filed suit against Defendants KETK, KETK-LP, Communications Corp. of America, and Comcorp of Tyler, Inc. (collectively "Comcorp") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq*, alleging gender discrimination based on gender harassment (hostile work environment) and disparate treatment. Comcorp[1] now moves for summary judgment on all claims.

Because Ms. Steinhauser cannot make out a prima facie case of disparate treatment—and, even if she could, has not refuted Comcorp's legitimate, non-discriminatory reasons for reassigning five of her accounts—Comcorp's motion is granted as to her disparate treatment

---

[1]Defendant Comcorp of Tyler, Inc. filed the instant motion for summary judgment, and alleges that it was incorrectly identified in Ms. Steinhauser's Complaint as "KETK, KETK-LP, Communications Corp. of America, and Comcorp of Tyler, Inc." In other words, Comcorp of Tyler contends that it is the only Defendant in this action. Because Ms. Steinhauser does not dispute or even address this contention in her response, the court will assume that Comcorp of Tyler's allegation is true. *See* L.R. CV-7(d).

1

claim. Further, because Ms. Steinhauser cannot demonstrate that she was subjected to unwelcome gender harassment on the basis of her sex, or that the harassment affected a term, condition, or privilege of employment, the court also grants summary judgment as to her hostile work environment claim.

**I. Background**

Ms. Steinhauser is currently employed as an accounts executive ("AE") at KETK-LP/NBC-53, a television station in Nacogdoches, Texas. Her supervisor, Chuck Phillips, joined the station as Local Sales Manager in December 2007. Before that, Mr. Phillips worked as a sales manager for one of KETK's competitors, SuddenLink Media. At the time Mr. Phillips was hired, the sales staff was comprised of two women—Ms. Steinhauser and Adana Carroll—and two men—Joe Ramos and John Hazelwood. Mr. Phillips's supervisors are Local Sales Market Manager Suzanne Calhoun and General Manager Dave Tillery.

After comparing the advertising expenditures of certain accounts at KETK with the advertising these accounts had purchased from SuddenLink, Mr. Phillips concluded that twenty-six accounts were underperforming—i.e., that they were spending considerably more on advertising with SuddenLink than with KETK. Sixteen of these accounts were assigned, while ten were not. Of the sixteen reassigned accounts, ten belonged to Mr. Ramos, one belonged to Mr. Hazelwood, and the final five were assigned to Ms. Steinhauser. None of the accounts belonged to Ms. Carroll.

Upon Mr. Phillips's recommendation, the station adopted a straight commission compensation system in 2008, with higher commission rates for all AEs. This system replaced

the salary-plus-commission system which had preciously existed.  AE Adana Carroll resigned at the end of the last pay period before the new commission-only system went into effect.

Mr. Phillips hired Jay Williams as an AE in June 2008.  Mr. Phillips had supervised Mr. Williams while both had worked at SuddenLink, and Mr. Williams's sales while at SuddenLink had substantially surpassed those of KETK's top performing AE, Joe Ramos.  When he began at KETK, Mr. Williams was assigned the twenty-six underperforming accounts.  The policy of KETK, as Ms. Steinhauser acknowledged during her deposition, is that accounts can be reassigned at any time.  Def. Mot. Sum. J., Ex. A, 53:4-9 [Doc. # 22].

Among the underperforming accounts, Mr. Williams was given five which had previously been worked on by Ms. Steinhauser: Mike Perry Dodge, Rex Perry Autoplex, CellularOne of East Texas, Johnson Furniture, and Commercial Bank.  When the accounts were reassigned, Mike Perry had not been on the air for several months, although Ms. Steinhauser testified that she had recently sold Mike Perry some advertising that would air in several months time.  *Id.* at 140:16 - 141:23.  The Rex Perry account had never advertised on-air during the time Ms. Steinhauser held the account, although Ms. Steinhauser testified that she sold them advertising time that had not yet aired when the account was reassigned.  *Id.* at 141:24 - 142:15.  CellularOne had not advertised with KETK for some time, although Ms. Steinhauser testified that CellularOne was on the air when the accounts were reassigned.  *Id.* at 143:12 - 144:10.  Johnson Furniture had not purchased advertising time in about five to six months when the account was reassigned, nor had Commercial Bank in several months.  *Id.* at 144:11 - 145:12.  Ms. Steinhauser stated during her deposition that it is reasonable to reassign an account which has not advertised with the station recently.  *Id.* at 39:11-16, 40:19-41:23.

Ms. Steinhauser complained to Local Sales Market Manager Suzanne Calhoun after the accounts were reassigned. Both Ms. Calhoun and General Manager Dave Tillery spoke with her about the complaint. Although Ms. Steinhauser believed the reassignment was somehow related to her gender—even though two male AEs had also lost a total of eleven accounts at the same time and the other female AE had not lost any accounts at all—she testified at deposition that she was unaware of the specifics of how Mr. Phillips had analyzed the accounts and decided which should be transferred. *Id.* at 149:17 - 150:23. Mr. Tillery suggested that Ms. Steinhauser discuss her concerns with Mr. Phillips, and ask him for future commissions on some advertising she had previously sold to the reassigned accounts. Ms. Steinhauser, after speaking with Mr. Phillips, was able to obtain the commissions Mr. Tillery indicated. Other than reporting Mr. Phillips's habit of taking personal calls during their meetings, Ms. Steinhauser lodged no further complaints against Mr. Phillips.

The remainder of Ms. Steinhauser's allegations concern Mr. Phillips's alleged failure to make eye contact, changes in his voice and demeanor when he spoke to her, acting like women were not present in sales meetings, directing questions at men, spending more time with male employees in individual meetings, speaking on his cell phone during meetings, and failing to provide the same information to women as he did to men. Ms. Steinhauser also points to three specific incidents.

First, Ms. Steinhauser testified that she asked Mr. Philips for assistance several times on the Commercial Bank account but was told "we'll talk about it later," and then subsequently males from the office had gone to lunch with Mr. Phillips and the agency that represented Commercial Bank. According to Comcorp, Mr. Phillips told Ms. Steinhauser that he would be

4

glad to help her if she first prepared an appropriate plan to present to the client, which she never did. Ms. Steinhauser does not refute this in her response. After the accounts were reassigned, Mr. Phillips took Messrs. Williams and Ramos to lunch with Point A Media, because these two AEs handled accounts that did business through the agency, while none of the other AEs did.

Second, Ms. Steinhauser suggests that the male AEs began selling a sales package three days before she was aware of its existence. However, Ms. Steinhauser admittedly does not provide Mr. Phillips with ideas for new sales packages. *Id.* at 225:8-21. According to Comcorp, before the details of the sales package in question were finalized, Mr. Ramos found out about the package three days before Ms. Steinhauser did. However, Ms. Steinhauser admitted knowing the package was being considered. *Id.* at 131:10-16.

Third, Ms. Steinhauser alleges that she overheard part of a telephone call—in which her name was never mentioned and she was unsure of who was on the other end of the phone but thought it was Tracy Pinkerton from Mike Perry Dodge—where Mr. Phillips stated that a particular account had more potential "and he had a guy coming in that he felt could handle it better." *Id.* at 174:4 - 176:3.

Ms. Steinhauser remains employed at KETK as of the date of the parties' summary judgment filings. Since the movement to a straight commission pay in mid-2008, Ms. Steinhauser's sales have decreased by just 0.5%, while Messrs. Ramos and Hazelwood's have decreased by 23.3 and 7.4%, respectively. She testified at deposition that Mr. Phillips has never actually said anything demeaning or derogatory about women, called her any names, threatened her, or stated that he did not want female AEs. *Id.* at 173:21 - 174:18, 177:5-6. Ms. Steinhauser does not believe Mr. Phillips intentionally created a hostile work environment. *Id.* at 270:20-22.

Recently, Mr. Phillips has directed conversation to her, and he regularly acknowledges another woman, Eva Brown, who works at KETK.  *Id.* at 127:7 - 128:14.

## II. Standard of Review

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a), (b).  A summary judgment motion should be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment under Fed. R. Civ. P. 56 has the burden of demonstrating that no material fact issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514  (1986).  If Comcorp meets this burden, then Ms. Steinhauser, as the non-moving party, must bring forth affirmative evidence in order to defeat the summary judgment motion. *Id.* at 257, 106 S. Ct. at 2514.  Ms. Steinhauser "may not rely merely on [the] allegations or denials" of the pleadings, but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  As the non-moving party, Ms. Steinhauser "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356  (1986).

Only a genuine dispute over a material fact—a fact which might affect the outcome of the suit under the governing substantive law—will preclude summary judgment.  *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510.  The dispute in this case is genuine if the evidence is such that a reasonable jury, properly instructed on the clear and convincing evidentiary standard, could return a verdict in Ms. Steinhauser's favor.  *See id.* at 255, 106 S. Ct. at 2514 ("[D]etermination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.").

Rule 56 requires the court to consider "the pleadings, the discovery and disclosure materials on file, and any affidavits." Fed. R. Civ. P. 56(c). Furthermore, the court must view all facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 468 (1992).

### III. Discussion

A.   Disparate Treatment

    1.   *Applicable law*

Ms. Steinhauser bears the initial burden of proving a prima facie case of disparate treatment or gender discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). To establish a prima facie case of discrimination, Ms. Steinhauser must show four elements: (1) she is a member of the protected class; (2) she sought and was qualified for the position; (3) she was discharged or suffered another adverse employment action; and (4) she was replaced by an individual outside the protected group, or was treated less favorably than another similarly situated employee outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005).

Once Ms. Steinhauser has established a case of prima facie discrimination, the burden of production shifts to Comcorp, which must articulate a legitimate and non-discriminatory reason for the employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1817. Comcorp's burden "is only one of production, not persuasion, and involves no credibility assessment."

7

*McCoy*, 492 F.3d at 557. If Comcorp comes forward with such a reason that, if believed, supports a finding that the employment action was non-discriminatory, the inference Ms. Steinhauser has raised disappears from the case. *Id.*

"The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 210-11, 113 S. Ct. 2742, 749 (1993)). Ms. Steinhauser must then offer:

> sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed motives alternative).

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also McCoy*, 293 F.3d at 557 ("To carry this burden the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.").

    2.    *Analysis*

        a.    **Whether Ms. Steinhauser has made out a prima facie case of disparate treatment**

There does not appear to be any dispute as to elements (1) and (2) of Ms. Steinhauser's prima facie case: i.e., that she is a member of a protected class because of her gender, and that she was qualified for the AE position she held. However, the court finds that there is little to no evidence on elements (3) or (4), namely that Ms. Steinhauser suffered an adverse employment

action when her accounts were reassigned[2] or that she was treated differently than similarly situated male AEs with respect to this reassignment.

        i.        <u>Element (3): Whether Ms. Steinhauser suffered an adverse employment action</u>

Although Mr. Phillips reassigned five of her accounts, Ms. Steinhauser had not been able to secure consistent—or in some cases, any—advertising from these clients. It is difficult to credit Ms. Steinhauser's allegations when two other AEs, both of whom are male, also lost accounts. In fact, the top performing AE Mr. Ramos lost twice as many accounts as Ms. Steinhauser did, while the other female AE, Ms. Carroll, did not lose any accounts at all.

Further, after she spoke with Mr. Phillips at Mr. Tillery's suggestion, Ms. Steinhauser was able to obtain future commissions on the advertising she had previously sold to certain reassigned accounts. Since the movement to a straight commission pay in mid-2008, Ms. Steinhauser's sales have decreased by just 0.5%, while Messrs. Ramos and Hazelwood's have decreased by 23.3 and 7.4%, respectively. Ms. Steinhauser has not demonstrated that she lost compensation due to the reassigned accounts, especially in comparison to similarly situated male AEs.

        ii.        <u>Element (4): Whether Ms. Steinhauser was treated less favorably than similarly situated male Aes</u>

The only evidence Ms. Steinhauser puts forth on this element is that even though other male AEs had accounts taken away from them, none of their accounts were currently on the air.

---

[2] Adverse employment actions can include a loss of compensation, duties, or benefits. *See Pegram v. Honeywell*, 361 F.3d 272, 283 (5th Cir. 2004) (finding that a transfer without a corresponding loss of compensation was not an adverse employment action). The *only* adverse employment action Ms. Steinhauser alleges is reassignment of her accounts. Pl. Resp., at 11 [Doc. # 25].

Taking as true Ms. Steinhauser's allegations that three of her accounts currently had advertising on the air, or were scheduled to have advertising on the air in the future, while none of the accounts taken from the male AEs did, Ms. Steinhauser nevertheless acknowledged at deposition that Comcorp owns these accounts and is well within its rights to reassign those that are not performing well for a particular AE.

Although Ms. Steinhauser had been able to secure some advertising from several of the reassigned accounts, an account does not have to be completely bereft of on-air advertising before it can be classified as "underperforming." Mr. Phillips, after undertaking a cost-benefit analysis, could have determined that these accounts had greater advertising potential and would simply have done better with a different AE. Under these facts, Ms. Steinhauser has not demonstrated that she was treated less favorably than other similarly situated male AEs.

b. **Whether Comcorp has put forth a legitimate non-discriminatory reason for reassigning the accounts**

Even if the court were to assume that Ms. Steinhauser has made out a prima facie case of discriminatory treatment, Comcorp has articulated a legitimate, non-discriminatory reason for reassigning her accounts, namely that they were underperforming and placing them with Mr. Williams, an individual with a better sales record, was a sound business decision.

c. **Whether Ms. Steinhauser has refuted Comcorp's legitimate non-discriminatory reason for reassigning the accounts**

Far from demonstrating that this legitimate non-discriminatory reason is a pretext, Ms. Steinhauser instead acknowledged at deposition that reassigning underperforming accounts was a good policy, and that sometimes certain accounts did better with a different AE.

The fact that Ms. Steinhauser's accounts were reassigned to a new male AE does not change this conclusion. Comcorp asserts, and Ms. Steinhauser does not dispute, that Mr. Williams was brought into KETK by Mr. Phillips because of his sales record while at SuddenLink: a sales record that surpassed even KETK's highest selling AE, Mr. Ramos. Mr. Williams was assigned twenty-six underperforming accounts, of which only five were Ms. Steinhauser's; eleven others belonged to her male AE counterparts.

It makes a great deal of sense, from a business perspective, to take underperforming accounts away from their current handlers and assign them to an individual with a proven track record. The fact that Mr. Williams happened to be male does not automatically make Comcorp's legitimate, non-discriminatory reason for the reassignment suspect, nor does the fact that Ms. Steinhauser had recently been successful in selling some unspecified amount of advertising to three of these clients. Mr. Phillips was entitled to assess the entire advertising history of the accounts, not just recent events, in making his decisions. Courts are not human resources managers, and should not be in the business of micro-managing an employer's business decisions. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 578, 98 S. Ct. 2943, 2950 (1978) ("Courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it.").

  d. **Conclusion**

The court therefore concludes that Comcorp's motion for summary judgment should be granted as to Ms. Steinhauser's disparate treatment claim.

B.  Hostile Work Environment

1. *Applicable law*

Title VII prohibits an employer from discriminating against its employees on the basis of gender. 42 U.S.C. § 2000e-2(a). A sexual harassment claim alleging hostile work environment "embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995); *see also Mire v. Texas Plumbing Supply Co., Inc.*, 286 F. App'x 138, 140 (5th Cir. 2008) (unpublished).

To make out the elements of a hostile work environment claim, Ms. Steinhauser must show that: (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Aryain v. Wal-Mart Stores of Texas LP,* 534 F.3d 473, 479 (5th Cir. 2008); *Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512, 523 (5th Cir. 2001); *Hartz v. Administrators of Tulane Educ. Fund*, 275 F. App'x 281, 288 (5th Cir. 2008) (unpublished). Where, as here, the alleged harasser is a supervisor with authority over the employee, only the first four elements need be satisfied. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Mire*, 286 F. App'x at 140. To affect a term, condition, or privilege of employment, the harassment

> must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment . . .The environment must be

deemed both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so.

*Aryain*, 534 F.3d at 479 (internal quotations omitted).

    2.    *Analysis*

As a preliminary matter, the court notes that Ms. Steinhauser's disparate treatment and hostile work environment claims seem to be more or less the same cause of action. There is no question that this is not the typical sexual harassment claim. Ms. Steinhauser admitted at deposition that Mr. Phillips never made any derogatory or insulting comment to her, and she stated that she did not believe his intent was to create a hostile work environment. Rather, Ms. Steinhauser alleges that Mr. Phillips's reassignment of her accounts, in conjunction with his general attitude toward her, created a hostile work environment. There simply does not seem to be much of a practical difference between Ms. Steinhauser's disparate treatment and hostile work environment claims. Nevertheless, the court will analyze this claim separately under the hostile work environment framework.

Based on the evidence in the record, Ms. Steinhauser cannot make out several elements of her hostile work environment claim. Although there does not appear to be a dispute as to element (1), there is little to no evidence of the remaining three elements.

    a.    **Elements (2) and (3): Whether Ms. Steinhauser was subjected to unwelcome sexual or gender harassment, and whether that harassment, if any, was based on her gender**

Ms. Steinhauser does not allege any incident that rises to the level of gender harassment. She points to no derogatory, insulting, or sexually suggestive comment made to her by Mr. Phillips, nor to any physical contact by Mr. Phillips. As discussed above, although Mr. Phillips

reassigned five of her accounts, he did so because he found the accounts to be underperforming. Although Ms. Steinhauser did lose several accounts with current or future advertising planned, she lost half as many accounts as Mr. Ramos overall. The other female AE, Ms. Carroll, did not lose any accounts at all.[3] Further, since the movement to a straight commission pay in mid-2008, Ms. Steinhauser's sales have decreased by only 0.5%, while Messrs. Ramos and Hazelwood's have decreased by 23.3 and 7.4%, respectively.

Ms. Steinhauser's other allegations—namely Mr. Phillips's habit of taking personal calls during meetings; his failure to make eye contact or otherwise acknowledge her; his failure to take her to a lunch meeting with Point A Media when she did not handle any accounts that did business through this agency; and Mr. Ramos's knowledge of a pending sales package several days before her, when her habit was not to offer ideas for sales packages to Mr. Phillips at all—do not constitute harassment. In the only instance she points to where he allegedly demeaned her, Ms. Steinhauser overheard half of a telephone conversation in which her name was never mentioned and she was not even certain who was on the other end of the phone.

"It is a simple fact that in the workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold shouldering' to the level of actionable offense." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003)

---

[3]Although Comcorp alleges that Ms. Steinhauser's claims also allege hostile work environment or discrimination based on Mr. Phillips's switch from a commission-plus-salary system to a straight commissions-only system for AEs, Ms. Steinhauser does not argue this point in her summary judgment response, with good reason. It is extremely difficult to show that a compensation system that applied across the board to all AEs, be they male or female, could be discriminatory or create a hostile work environment. The court will therefore not address the compensation scheme, except insofar as it applies to Ms. Steinhauser's other allegation, in this Order.

(internal quotation omitted). Ms. Steinhauser has simply not demonstrated that she was the victim of any gender harassment which created a hostile work environment. Even assuming that she had, there is no evidence that the reassignment of her accounts or Mr. Phillips's allegedly unfriendly behavior to her are based on her gender.

  b.  **Element (4): Whether the harassment affected a term, condition, or privilege of employment**

Even assuming that Ms. Steinhauser could demonstrate that harassment existed and that it was due to her gender, she has pointed to no "term, condition, or privilege of employment" which was affected other than the possible compensation lost when her accounts were reassigned.[4] A "term, condition, or privilege of employment" may include compensation, 42 U.S.C. § 2000e-2(a)(1), but, as already discussed, Ms. Steinhauser was not the only AE to lose accounts. She was able to obtain future commissions on the advertising she had previously sold to certain reassigned accounts after speaking with Mr. Phillips, and has seen her sales decrease by just 0.5% since the movement to a straight commission pay while the male AEs have seen a decrease between 7.4% and 23.3%. In short, Ms. Steinhauser cannot demonstrate that she lost compensation, especially when her situation is compared to those similarly situated male AEs.

  c.  **Conclusion**

The court therefore concludes that Comcorp's motion for summary judgment should be granted as to Ms. Steinhauser's hostile environment claim.

---

[4] This is the only actual incident Ms. Steinhauser alleges that could affect a "term, condition, or privilege" of her employment is the reassignment of five of her accounts, because this had the potential to affect her compensation under the commissions-only system. There is no indication that her other allegations regarding Mr. Phillips's general negative attitude could have impacted her compensation, or any other term, condition, or privilege of employment.

IT IS THEREFORE ORDERED that Defendants KETK, KETK-LP, Communications Corp. of America, and Comcorp of Tyler, Inc. Motion for Summary Judgment [Doc. # 22] is GRANTED.

So **ORDERED** and **SIGNED** this **9** day of **February, 2010.**

_____
Ron Clark, United States District Judge